UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOHN HORONZY,<br><br>                    Plaintiff,<br><br>        v.<br><br>CORRECTIONAL CORPORATION OF AMERICA; MS. BRENNER; MS. FRY; MR. YAHLE; MS. ROGERS; MR. CHANEY; JUAN IBARRA; and JOHN AND JANE DOES 1-5, all named in their individual and official capacities,<br><br>                    Defendants. | Case No. 1:11-cv-00246-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

        Defendants have filed the following motions in this prisoner civil rights case: (1) CCA Defendants' Motion to Compel Plaintiff to Respond to Defendants' First Discovery Requests and to Deem Defendants' First Requests for Admissions to Plaintiff Admitted (Motion to Compel) (Dkt. 22); and (2) CCA Defendants' 12(b) Motion to Dismiss (Motion to Dismiss). (Dkt. 23.) Having reviewed the written arguments of the parties, as well as the record in this case, the Court has determined that oral argument is unnecessary, and therefore enters the following Order.

**MEMORANDUM DECISION AND ORDER - 1**

## BACKGROUND

Plaintiff is an inmate in the custody of Idaho Department of Correction (IDOC) and is currently incarcerated at Idaho State Correctional Institution (ISCI). However, between July 6, 2009, and February 15, 2011, Plaintiff was incarcerated at the Idaho Correctional Center (ICC).

On May 25, 2011, Plaintiff filed a civil rights complaint alleging that while he was incarcerated at ICC, Defendant Brenner, a correctional officer, made sexual advances toward him. (*See* Dkt. 3.) When Plaintiff declined her sexual advances, he alleges that Defendant Brenner retaliated against him by preventing him from receiving medical treatment and his religious diet, conducting numerous cell and pat-down searches on him, placing him in segregation, and destroying and/or stealing his property. Plaintiff further alleges that Defendants Fry, Yahle, Rogers, and Chaney aided Defendant Brenner in these actions, and that they fired him from his prison job as well. Finally, Plaintiff claims that after he reported the alleged misconduct of Defendants Brenner, Fry, Yahle, Rogers and Chaney, he was then transferred to ISCI. Defendant Ibarra, an ICC investigator, later interviewed Plaintiff about the alleged misconduct but didn't seem concerned about Defendants' threatening conduct toward Plaintiff, and instead harassed and intimidated Plaintiff. (*Id.*)

The Court reviewed Plaintiff's initial Complaint and permitted him to proceed only against Defendant Brenner for his claims of Eighth Amendment sexual abuse and First Amendment retaliation. (Dkt. 7.) Thereafter, Plaintiff filed a Supplemental or First

**MEMORANDUM DECISION AND ORDER - 2**

Amended Prisoner Civil Rights Complaint. (Dkt. 8.) On June 15, 2012, the Court

determined that Plaintiff cured the deficiencies in his original Complaint so he was then

permitted to proceed against all Defendants on all of his claims, including constitutional

violations of failure to protect, calculated harassment and retaliation, inadequate medical

care, and denial of religious practices, so long as he served the Amended Complaint on all

Defendants within 60 days after entry of the Order. (Dkt. 12, p.2; Dkt. 8, pp.4-12.)

However, on February 11, 2013, the Court ordered all claims against Defendant Brenner

dismissed without prejudice because she was not served within the time period set forth in

the June 15, 2012 Order. (Dkt. 27, p.4.)

On January 10, 2013, during the discovery period in this case, Defendants

Corrections Corporation of America (CCA), Fry, Yahle, Rogers, Chaney and Ibarra

(CCA Defendants) filed the two pending motions: a Motion to Compel wherein they

argue that Plaintiff's responses to CCA Defendants' discovery requests and request for

admissions are evasive and fail to respond to the substance of the questions asked (Dkt.

22), and a Motion to Dismiss this action in its entirety because Plaintiff failed to properly

exhaust his administrative remedies as to any of his claims. (Dkt. 23.) Because the CCA

Defendants have filed a Motion to Dismiss seeking the complete dismissal of this action,

the Court will first address the Motion to Dismiss, and then the Motion to Compel.

## CCA DEFENDANTS' MOTION TO DISMISS (DKT. 23)

Pursuant to Federal Rule of Civil Procedure 12(b), CCA Defendants have filed a

Motion to Dismiss on the basis that Plaintiff failed to exhaust his administrative remedies

**MEMORANDUM DECISION AND ORDER - 3**

prior to filing his lawsuit. For the reasons set forth below, the Court will grant in part and deny in part CCA Defendants' Motion to Dismiss.

## 1. Standard of Law

Pursuant to the Prison Litigation Reform Act of 1995 (PLRA),[1] a prisoner is required to exhaust all of his administrative remedies within the prison system before he can bring a civil rights lawsuit challenging the conditions of his confinement. 42 U.S.C. § 1997e(a). "Proper" exhaustion of administrative remedies is required, meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006).[2] "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). The *Jones v. Bock* Court noted the important policy concern behind requiring exhaustion is that it "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id*. at 204.

Where there is an "informal[]" and "relative[ly] simpl[e]" prison grievance system, prisoners must take advantage of it before filing a civil rights complaint. *Woodford v.*

---

[1]  110 Stat. 1321-71, *as amended*, 42 U.S.C. § 1997e, *et seq.*

[2] *Cf. Jones v. Stewart*, 457 F.Supp. 2d 1131, 1136-37 (D. Nev. 2006) (if, *at every level of administrative review available*, prison officials review the merits of a grievance that does not meet the applicable procedural rules, such as timeliness, the prisoner has satisfied the administrative exhaustion requirement of *Woodford v. Ngo*).

**MEMORANDUM DECISION AND ORDER - 4**

*Ngo*, 548 U.S. at 103. In *Woodford v. Ngo*, the prisoner had filed his grievance within six months of the incident at issue, rather than within fifteen days as required by the California Prison grievance system. *Id*. at 2383-84. The Supreme Court rejected the Ninth Circuit's determination that the prisoner "had exhausted administrative remedies simply because no such remedies remained available to him." *Id*. at 2384.

Failure to exhaust remedies is an affirmative defense that should be brought as an unenumerated 12(b) motion. *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003). In deciding a motion to dismiss for failure to exhaust administrative remedies, a court may look beyond the pleadings and decide disputed issues of fact. *Id.* at 1119-20. Defendants bear the burden of proving failure to exhaust. *Brown v. Valoff*, 422 F.3d 926 (9th Cir. 2005).

## 2. Discussion

### A. *IDOC Grievance Procedure*

The IDOC has a relatively simple grievance procedure which ICC follows. The inmate first submits an offender concern form, then a grievance form if informal resolution cannot be accomplished, and finally an appeal of the response to the grievance. *See Purcell Aff.* (Dkt. 23-2, p.3)*; IDOC Division of Operations Directive 316.02.01.001* (Dkt. 23-5.) Upon intake at ICC, all new inmates receive an inmate handbook that covers numerous topics, including the grievance procedure, as well as verbal instructions regarding the grievance procedure. (Dkt. 23-2, p.2.) An offender must complete all three steps in order to exhaust the administrative grievance process. (*Id.*, p.5.)

The first step in the inmate grievance process begins with the inmate addressing an

**MEMORANDUM DECISION AND ORDER - 5**

Offender Concern Form to the staff member most capable of responding to and, if appropriate, resolving the issue. (*Id.,* p.3.) The staff member should respond within seven days of receipt of the Offender Concern Form. The concern form is in triplicate; the staff member keeps the white copy, the pink copy is returned to the inmate after the staff member signs for receipt of it (for proof that the concern was sent), and the yellow copy is later returned to the offender with the staff response. (Dkt. 23-5, p.11.)

If the issue is not resolved in the first step, the offender may then proceed to the second step and file a Grievance Form within 30 days of the incident or problem that is the basis for the grievance (unless the reviewing authority grants an extension of time).[3] (Dkt. 23-2, pp.3-4.) The Grievance Form must comply with the following requirements: (1) the yellow copy of the Offender Concern Form with the staff member's response (or if no response was provided, the inmate must write "no response" in the staff response section) must be attached to the Grievance Form; (2) the Grievance Form must be handwritten (photocopies are not allowed), legible and signed; (3) the Grievance Form must contain specific information including the nature of the complaint, dates, places, and names; and (4) the offender must suggest a solution to the issue and can only raise one issue per grievance. (*Id.*; Dkt. 23-5, pp.4-5.) If the Grievance Form is not completed correctly, it is returned to the offender (with all attachments) using a

---

[3]If the offender is grieving an issue that occurred at a facility other than where the offender is currently housed, the Grievance Coordinator at the current institution faxes the Grievance/Appeal Form and attachments to the Grievance Coordinator at the facility where the issue occurred, but all data entries are still done at the facility where the offender is housed. (Dkt. 23-2, p.8.)

**MEMORANDUM DECISION AND ORDER - 6**

Grievance/Disciplinary Offense Report (DOR) Transmittal Form.[4] (Dkt. 23-5, p.6.)

If the Grievance Form is filled out correctly, the Grievance Coordinator enters the grievance information into the Corrections Integrated System (CIS) electronic database and assigns it to the staff member most appropriate to respond to, and resolve, the grievance. (Dkt. 23-2, pp.4-5; Dkt. 23-5, p.6.) The staff member has ten days to respond, which response is then returned to the Grievance Coordinator who logs the information into the CIS database, and that information is then forwarded to a "reviewing authority," who is usually a deputy warden. (Dkt. 23-2, p 4; Dkt. 23-5, p.7) The reviewing authority must review the grievance, the staff member's response, and deny, modify or grant the offender's suggested solution. (Dkt. 23-2, p.4.) The reviewing authority then returns the grievance to the Grievance Coordinator, who files the original grievance form and returns a copy to the inmate with the responses of the assigned staff member and reviewing authority. (*Id*.)

If the offender is not satisfied with the reviewing authority's response to his grievance, he may proceed to the third step by filing an appeal within five days of receiving the response to his grievance. (*Id*.) The appeal form is the Grievance/Appeal form, with the "Appeal" box checked, and the inmate must attach the original Grievance Form to the Appeal Form and explain why the grievance finding should be changed. (*Id.*)

---

[4]Physical copies of all grievances and appeals are maintained by the Grievance Coordinator for five years, regardless of whether they are not processed and returned to the inmate for failing to properly follow the grievance process. In addition, all grievances are entered into the CIS database as required by IDOC. (Dkt. 23-2, p.5.)

**MEMORANDUM DECISION AND ORDER - 7**

Once the Grievance Coordinator receives the appeal, it is entered into the CIS database and is forwarded to the "appellate authority," who is typically the facility head. (*Id.*, p.5.) The appellate authority must respond within 14 days of receipt of the appeal and notify the Grievance Coordinator that the appeal has been completed. The Grievance Coordinator logs the completion date in the CIS database, forwards a printed copy of the grievance and the offender's original attachments to the offender, and files a copy of the printed grievance, the original Grievance/Appeal form, and copies of all attachments in the facility administration area. (*Id.*; Dkt. 23-5, p.10.) Upon completion of all three steps, the offender grievance process is exhausted. (Dkt. 23-2, p.5.)

## B. *Plaintiff's Exhaustion of Administrative Remedies*

Here, CCA Defendants contend that during the time period at issue – July 6, 2009 to February 15, 2011 – Plaintiff filed Offender Concern Forms and Grievances which were either not fully exhausted and/or not related to the claims in this lawsuit. Plaintiff and CCA Defendants submit the following evidence regarding these grievances:

(1) Plaintiff filed a Grievance Form on or about October 8, 2009, complaining of being charged for telephone calls to his home that were picked up by the answering machine and not a live person. The Grievance Form was rejected and returned to Plaintiff because he failed to attach the underlying Offender Concern Form. CCA Defendants' CIS database record and a copy of the Grievance/DOR Transmittal Form sent back to Plaintiff summarizes the error. (Dkt. 23-9, pp.2-3.)

(2) On November 2, 2009, Plaintiff properly refiled the rejected Grievance Form (regarding the telephone charges), but the grievance was denied December 7, 2009. Plaintiff did not appeal the denial. (Dkt. 23-9, pp.4-5.)

(3) On or about December 10, 2009, Plaintiff filed a Grievance Form

concerning an increase in the number of points calculated for his inmate classification. The grievance was denied and returned to Plaintiff on January 6, 2010. Plaintiff filed an appeal which was also denied. (Dkt. 23-9, pp.8-11.)

(4) On or about November 14, 2010, Plaintiff filed a Grievance Form (dated October 29, 2010) complaining that he was mistakenly removed from his religious diet. The grievance was reviewed, denied, and then returned to Plaintiff on December 6, 2010. Plaintiff did not appeal the denial. (Dkt. 23-8, pp.1-4.)

(5) On March 10, 2011, Plaintiff prepared an Offender Concern Form addressed to ICC Warden, complaining that between July 2009 and February 2011, Plaintiff was harassed and threatened by ICC staff including being propositioned by Defendant Brenner, fired from his job, harassed by Defendants Rogers and Yahle, and improperly placed in segregation for four days. Plaintiff also requested an investigation. A staff member's signature and date acknowledges receipt of the Concern Form on March 13, 2011, and Defendant Ibarra provided a written response on the Concern Form dated March 16, 2011, requesting that Plaintiff provide a detailed report with dates and to send the report to Defendant Ibarra. (Dkt. 23-10.)

(6) On March 31, 2011, Plaintiff prepared an Offender Concern Form addressed to ICC Warden, complaining that he felt intimidated and threatened by Defendant Ibarra's investigative visit on March 30, 2011 regarding Plaintiff's previous complaint about being harassed, threatened and propositioned by various ICC staff members. A staff member's signature and date acknowledges receipt of the Concern Form on April 3, 2011, but no written response was provided. (Dkt. 29-2, p.2.)

(7) On or about April 21, 2011, Plaintiff filed a Grievance Form complaining that "the concern submitted to ICC Warden was not responded to in the time allowed by policy." (Dkt. 29-2, p.2.) On April 28, 2011, ICC rejected the Grievance Form and returned it to Plaintiff because the "Warden never received concern form - ICC did not process your grievance." CCA Defendants' CIS database record and a copy of the Grievance/DOR Transmittal Form sent back to Plaintiff summarizes the basis for their rejection. (Dkt. 23-7; Dkt. 29-1, p.3.) Plaintiff did not refile the Grievance Form or file an appeal.

As to the Grievance Forms filed in 2009 regarding the telephone charges and the

**MEMORANDUM DECISION AND ORDER - 9**

calculation of inmate classification points, the Court agrees with CCA Defendants'

argument that these grievances (whether fully exhausted or not) do not relate to any of the

claims in this lawsuit and are therefore inapposite to the discussion herein, except to the

extent that they demonstrate Plaintiff's awareness of the IDOC grievance process and

how to fully exhaust a grievance. The remaining Offender Concern Forms and Grievance

Forms, however, do relate to some of the claims in this matter so the Court will focus its

review on these and other documents in the record to determine whether Plaintiff fully

exhausted his administrative remedies. Because each claim must have been fully

exhausted before filing suit, the Court will address the exhaustion issue on a claim-by-

claim basis.

### (1) *Inadequate Medical Care*

Nothing in the record indicates Plaintiff attempted to exhaust his claim of

inadequate medical care/treatment. Accordingly, CCA Defendants' Motion to Dismiss

will be granted as to this claim.

### (2) *Interference with Religious Diet*

Plaintiff's Grievance Form dated October 29, 2010, which complains of Plaintiff

being mistakenly removed from his religious diet, is one of the claims alleged in this

lawsuit. Once the Grievance was denied, however, Plaintiff failed to file an appeal which

is the third step in the IDOC grievance process. As a result, Plaintiff failed to exhaust his

administrative remedies as to his claim of CCA Defendants' interfering with or denying

him his religious diet. CCA Defendants' Motion to Dismiss will be granted as to this

**MEMORANDUM DECISION AND ORDER - 10**

claim.

### (3) *Failure to Protect, Harassment and Retaliation*

After Plaintiff was transferred from ICC to ISCI on February 15, 2011, Plaintiff's next submission was an Offender Concern Form dated March 10, 2011, which he addressed to the ICC Warden and complained about issues that now comprise a majority of the claims in this lawsuit: that between July 2009 and February 2011, Plaintiff was harassed and threatened by ICC staff including being propositioned by staff member Brenner, then fired from his job, and sent to segregation for four days without cause. A staff member's signature acknowledges receipt of the Concern Form on March 13, 2011, and three days later, Defendant Ibarra provided a written response on the Concern Form requesting Plaintiff provide him with "a detailed report with dates." (Dkt. 23-10.) Defendant Ibarra did not provide Plaintiff with a deadline to submit the report.

On March 30, 2011, Defendant Ibarra visited Plaintiff to investigate the complaints he had made in the March 10 Concern Form. The next day, Plaintiff prepared another Offender Concern Form addressed to ICC Warden, complaining that he felt intimidated and threatened by Defendant Ibarra's investigative visit. A staff member's signature acknowledges receipt of the Concern Form on April 3, 2011, but no written response was provided. (Dkt. 29-2, p.2.) As a result, on or about April 21, 2011, Plaintiff filed a Grievance Form complaining that "the concern submitted to ICC Warden was not responded to in the time allowed by policy." (*Id.*) On April 28, 2011, the Grievance Form was rejected and returned to Plaintiff; the Transmittal Form documenting the rejection

**MEMORANDUM DECISION AND ORDER - 11**

states that the reason for the rejection was the "Warden never received the concern form -

- ICC did not process your grievance." (Dkt. 29-1, p.3.) The Transmittal Form also

contains boilerplate text that if the reason for rejection falls under this "other" category,

then it must be approved by the review or appellate authority. Defendants have not

provided the Court with any documentation indicating such approval. Additionally,

nothing in the record indicates that Plaintiff refiled the Grievance Form or filed an appeal.

Finally, Defendant Ibarra's handwritten note on the ICC investigation report states:

"Inmate Horonzy has not filed paperwork as req[uired] as of this date: 5/19/11 case

closed." (Dkt. 28-4, p.4.)

   As to these remaining claims of CCA Defendants' failing to protect Plaintiff from

certain ICC prison staff's inappropriate behavior, harassment and retaliation, the crux of

the matter appears to be whether Plaintiff timely grieved these issues, and whether he had

a duty to do anything further once he received the response written on the Offender

Concern Form from Defendant Ibarra, or once he received the April 28 Transmittal Form

rejecting his Grievance Form. In particular, Defendants argue that Plaintiff did not file a

Grievance Form (as opposed to the Concern Form) within 30 days of the incident as

required by the IDOC grievance procedure (*see* Dkt. 23-5, p.5) nor did he resubmit his

April 21 Grievance or file an appeal after receiving the April 28 Transmittal Form that

rejected his Grievance.

   Those arguments could be persuasive and dispositive if the complaints at issue

here were handled entirely through the normal IDOC grievance process. However,

**MEMORANDUM DECISION AND ORDER - 12**

Warden Wengler's decision to order a separate investigation into the issues raised in Plaintiff's March 10 Concern Form: (1) effectively bypassed the normal grievance procedure and that, in turn, eliminated Plaintiff's obligation to exhaust via the IDOC grievance procedure; and (2) granted Plaintiff's requested remedy of conducting an investigation, thereby resolving Plaintiff's concern at an intermediate level of the grievance process which left him without an "available" remedy to appeal.

The Court first concludes that CCA Defendants have failed to carry their burden to show that any relief remained available in or through the IDOC grievance process once Plaintiff was informed that his requested investigation was being conducted by Defendant Ibarra. In this respect, Plaintiff's case is similar to an inmate's situation in *Brown v. Valoff*, 422 F.3d 926 (9th Cir. 2005). There, as here, inmate Brown grieved a claim of staff misconduct. At the second level of review, Brown was informed that his appeal was partially granted and that the matter had been turned over for a separate investigation, and that he would be notified of the disposition of his complaint but not about any disciplinary action taken against the officer. *Id*. at 931. The memorandum did not state that any further review was available. Brown did not proceed to the third level of review, though he later inquired about the investigation.  *Id*.

On appeal, the Ninth Circuit concluded that defendants had not proven that some relief remained available to Brown through the normal grievance procedure once it had ordered an investigation into the staff member's alleged misconduct. *Id.* at 937. The "reasonable import" of the response memorandum was that no further relief would be

**MEMORANDUM DECISION AND ORDER - 13**

available through the appeals process, but a confidential investigation would go forward

instead. *Id.* at 937-38. This conclusion was further supported by the California prison's

applicable policies and manuals which required that staff misconduct grievances be

investigated only through the specialized staff complaint process, negating any possibility

of a parallel investigation through the usual appeals process. *Id*. at 938. Accordingly, the

Ninth Circuit concluded that no further relief is available to a prisoner once his appeal is

partially granted at the second level of review and a confidential investigation into a staff

complaint is launched.  *Id*. at 938-39; *see also Harvey v. Jordan*, 605 F.3d 681, 685 (9th

Cir. 2010) (inmate has no obligation to appeal from grant of relief or partial grant that

satisfies him, in order to exhaust his administrative remedies).

     Here, Plaintiff complained about staff misconduct in his March 11 Concern Form

and requested an investigation; he was then informed in writing that an investigation was

being conducted into the alleged misconduct. Plaintiff was not told that any further

review or relief was available. Moreover, the Warden granted Plaintiff's requested relief –

to conduct an investigation – leaving Plaintiff with nothing left to grieve or remedy in the

remaining steps of the IDOC grievance process. While it is true that the California prison

at issue in *Brown* also had policies and manuals specifying that a complaint of staff

misconduct should be investigated *only* through a specialized staff complaint process

which provided further evidence that there was no parallel investigation or available

remedy through the normal appeal process, the absence of such a written policy in this

case does not require a contrary result. CCA Defendants bear the burden of establishing

Plaintiff's failure to exhaust, but they have not discussed or shown what further relief was available to Plaintiff through the subsequent steps of the IDOC grievance process once the Warden granted Plaintiff's requested relief and ordered a separate investigation into the staff misconduct. Absent any such relief still being "available" to Plaintiff, he was no longer obligated to complete the IDOC grievance process regarding the March 10 Concern Form.

The Court next concludes that, as to these claims, Plaintiff's failure to refile or appeal his April 21 Grievance Form also does not constitute a failure to exhaust his administrative remedies. The record shows that the April 21 Grievance Form is related to a second Concern Form that Plaintiff filed on March 31, 2011 regarding Defendant Ibarra's conduct toward Plaintiff during his investigative visit on March 30, 2011.[5] (Dkt. 29-2, p.2.) Defendant Ibarra's alleged harassment and intimidation constitutes part of these claims and is related to the March 10 Concern Form, yet CCA Defendants' handling of the April 21 Grievance and its underlying Concern Form appears to have deviated from the IDOC grievance procedure and thereby confused or misled Plaintiff as to his obligation to respond or how next to proceed.

Plaintiff addressed his March 31 Concern Form to "ICC Warden" and a staff

---

[5]After the briefing was completed for CCA Defendants' Motion to Dismiss, Plaintiff filed a Special Traverse to rebut some of the statements made in the Grievance Coordinator's Affidavit, and attached the March 31 Concern Form, the April 21 Grievance Form, and the April 28 Transmittal Form as exhibits. (Dkt. 29.) Based on the content and dates of these submissions, the Court determines that the March 31 Concern Form is the underlying Concern Form to Plaintiff's April 21 Grievance. *See Wyatt*, 315 F.3d at 1119-20 (court may look beyond the pleadings and resolve disputed issues of fact in deciding a motion to dismiss for failure to exhaust administrative remedies).

MEMORANDUM DECISION AND ORDER - 15

member acknowledged receipt of it by signing it on April 3, 2011. However, the Concern

Form contains no written response. Plaintiff then timely filed his Grievance on or about

April 21, 2011 because "the concern submitted to ICC Warden was not responded to in

the time allowed by policy." (Dkt. 29-2, p.2.) A week later, the ICC Grievance

Coordinator returned the Grievance to Plaintiff (via the April 28 Transmittal Form) with a

handwritten reason in the "other" category that "the Warden never received concern form

– ICC did not process your grievance." (Dkt. 29-1, p.3.) The Grievance Coordinator's

response is deficient for several reasons: (1) nothing in the record shows that this "other"

reason was approved by the review or appellate authority as required by the Form itself;

(2) there is no explanation on the Transmittal Form or in the record herein as to why the

Warden never received the Concern Form when a staff member's signature acknowledged

receipt of the Concern Form; and (3) there is no instruction or indication as to what

Plaintiff should do next. Plaintiff already submitted the Concern Form, had it signed by a

staff member, and was then told the Warden never received it. That information, without

more, begs the question of what Plaintiff's next action should be, if any.

　　　　Two Circuit Court cases are instructive and applicable here. In the Ninth Circuit

case of *Nunez v. Duncan*, an inmate filed a complaint alleging a prison official's strip

search of him violated the Fourth Amendment. 591 F.3d 1271, 1224 (9th Cir. 2010). At

the second level of review, the warden erroneously referred the inmate to the wrong

policy in support of the disputed strip search. Over the next several months, the inmate's

numerous attempts to obtain a copy of the wrong policy were all unsuccessful so he

**MEMORANDUM DECISION AND ORDER - 16**

finally appealed the warden's decision to the third level of review, which was then denied as untimely. *Id*. at 1220-21. The Ninth Circuit reversed the district court's decision to dismiss the inmate's case for failure to properly exhaust his administrative remedies, and held that an inmate's failure to exhaust may be excused if such failure was not through his own fault but because of a prison official's mistake. *Id.* at 1224. *See also Sapp v. Kimbrell* 623 F.3d 813, 823 (9th Cir. 2010) (improper screening of an inmate's administrative grievances renders administrative remedies "effectively unavailable" such that exhaustion is not required under the PLRA).

In the Seventh Circuit case of *Dole v. Chandler*, an Illinois inmate submitted a grievance which a prison guard picked up, but prison officials later told the inmate they had no record of the grievance and did not give the inmate any instructions on how he should proceed. 438 F.3d 804, 807 (7th Cir. 2006). The inmate did not resubmit his grievance, but instead filed suit in district court. The Seventh Circuit ruled that the inmate did not fail to exhaust his remedies when he "properly followed procedure and prison officials were responsible for the mishandling of his grievance." *Id.* at 811.

The Court finds that Plaintiff's attempt to grieve Defendant Ibarra's alleged misconduct complied with the IDOC grievance procedure; it was the prison officials' improper screening or mishandling of the grievance, and failure to provide instructions on how next to proceed, which foiled Plaintiff's efforts to complete all the necessary steps in the IDOC grievance process. Plaintiff's failure to exhaust is therefore excused as to the rejected April 21 Grievance Form.

**MEMORANDUM DECISION AND ORDER - 17**

CCA Defendants' remaining argument is that Plaintiff's attempt to exhaust these claims was untimely because he did not file a Grievance Form within 30 days of the incident as required by the IDOC grievance procedure. (*See* Dkt. 23-5, p.5) The "incident" at issue here is alleged to have occurred on an ongoing basis between July 2009 and February 15, 2011. That means Plaintiff needed to submit his Grievance before March 15, 2011. The March 10 Concern Form was filed before the March 15, 2011 deadline, rendering its submission timely. And while the follow-up Grievance Form normally would had to have been submitted within five days of the March 10 Concern Form filing, as soon as the Warden granted Plaintiff's request (in the March 10 Concern Form) for an investigation into the alleged misconduct, Plaintiff's obligation to complete the remaining steps in the IDOC grievance process ended, including the subsequent submission of a Grievance Form. Furthermore, because the March 31 Concern Form is the underlying Concern Form to Plaintiff's April 21 Grievance Form (*see supra* n.5), the Court rejects CCA Defendants' alternate argument that the April 21 Grievance Form was somehow related to the March 10 Concern Form and therefore was untimely. CCA Defendants' timeliness arguments are therefore deemed moot. For all of these reasons, CCA Defendants' Motion to Dismiss will be denied as to these remaining claims.

Finally, the Court reminds CCA Defendants of their important obligation to provide all pertinent documents to meet their burden of proof for a failure to exhaust argument. Although the ICC Grievance Coordinator stated in her affidavit that "physical copies of <u>all</u> grievances and appeals are maintained by the Grievance Coordinator for five

**MEMORANDUM DECISION AND ORDER - 18**

(5) years, regardless of whether they are not processed and sent back to the inmate" (Dkt. 23-2, p.5), CCA Defendants' submissions in this case did not reflect ICC's compliance with this IDOC policy. As to the claims of staff misconduct, CCA Defendants only provided the Court with a one page computer-generated "Grievance Listing" report which summarized Plaintiff's grievances filed between 2009 and 2012, a copy of the March 10 Concern Form, and Defendant Ibarra's Investigation Guide and Checklist. (*See* Dkts. 23-7, 23-10, 28-4.) CCA Defendants failed to submit the March 31 Concern Form, the April 21 Grievance Form or the April 28 Transmittal Form; Plaintiff provided those documents to the Court. ICC's failure to maintain comprehensive records, as required by its own policy (*see* Dkt. 23-5, p.13), and/or to be as thorough and forthcoming of such records when engaged in litigation, unduly hinders the Court's efforts to fully and fairly rule on dispositive motions such as the pending Motion to Dismiss.

## CCA DEFENDANTS' MOTION TO COMPEL (DKT. 22)

Pursuant to Federal Rule of Civil Procedure 37, CCA Defendants have filed a Motion to Compel on the basis that Plaintiff's responses to Defendants' discovery requests and requests for admission are evasive and nonresponsive. For the reasons that follow, the Court will grant in part CCA Defendants' Motion to Compel as to some of the discovery requests, and the remaining requests will be deemed moot.

### 1. Standard of Law

Federal Rule of Civil Procedure 26(b) allows "[p]arties [to] obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party .

MEMORANDUM DECISION AND ORDER - 19

. . ."  The term "relevant" is further defined as information that is "reasonably calculated to lead to the discovery of admissible evidence, and it "need not be admissible at trial." Fed. R. Civ. P. 26(b)(1). Although relevance has a broad meaning, district courts are given wide discretion to apply the discovery rules in a way that will achieve the policy of the Federal Rules of Civil Procedure; namely to "secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1.

If the answering party fails to adequately respond to discovery, the propounding party can move for an order compelling discovery under Federal Rule of Civil Procedure 37(a).  A court should deny a motion to compel if the information requested falls outside the scope of discovery.  *See Nugget Hydroelectric, L.P. v. Pacific Gas & Elec. Co.*, 981 F.2d 429, 438-39 (9th Cir.1992), cert. denied, 113 S.Ct. 2336 (1993).

Federal Rule 33 governs interrogatories to parties. Fed. R. Civ. P. 33. Interrogatories must be answered by the party to whom they are directed and "answered separately and fully in writing under oath" unless objected to, which must be done "with specificity." Fed. R. Civ. P. 33(b)(3)-(4).

Federal Rule 36 governs requests for admission, which a party may serve on another party to admit the truth of any matters within the scope of Rule 26(b)(1) relating to facts, the application of law to fact, opinions of either, or the genuineness of any described document. Fed. R. Civ. P. 36(a)(1). A matter is admitted unless the responding party serves a written answer or objection within 30 days after being served. Fed. R. Civ. P. 36(a)(3). If a matter is not admitted, the answer must specifically deny it or state in

detail why the responding party cannot admit or deny it. Fed. R. Civ. P. 36(a)(4). The responding party may also object to a request so long as the grounds for objecting are stated. Fed. R. Civ. P. 36(a)(5).

**2. Discussion**

CCA Defendants contend that Plaintiff has failed to respond adequately to the following discovery: (1) Interrogatory Nos. 9-25 because Plaintiff merely repeated the following response to each of these Interrogatories: "Plaintiff will supplement this Request when he obtains the documents he has requested from the Defendants." (Dkt. 22-5, pp. 3-5); and (2) 67 Requests for Admission because Plaintiff's response to each request was "unable to respond" and then he generally objected by stating that "Plaintiff objects to these requests for admissions from Defendants." (Dkt. 22-8, p.2.)[6] CCA Defendants request that Plaintiff be required to respond properly to Interrogatory Nos. 9-25, and that the matters in Requests for Admission 1-67 all be deemed admitted.

Plaintiff argues that because he is proceeding pro se, "he just did not know how to respond" to CCA Defendants' discovery requests, and to answer some of CCA Defendants' questions, he needs certain documents from CCA Defendants (which he sought in discovery requests). (Dkt. 26, p.2.) Plaintiff requests that the Court allow

_____

[6]CCA Defendants did not provide the Court with Plaintiff's actual responses to Defendants' First Request for Admissions, but instead attached the Grievance Listing of Plaintiff's grievances as the exhibit purporting to contain Plaintiff's responses. (*See* Dkts. 22-2, p.2; 22-7.) Although it appears CCA Defendants' oversight was inadvertent and not intentional, the Court once again reminds them to be more accurate and thorough in their submissions to the Court. As a result, the Court will rely upon CCA Defendants' counsel's letter to Plaintiff dated January 3, 2013 -- wherein counsel reiterates Plaintiff's responses to the Requests for Admission – as evidence of Plaintiff's responses. (Dkt. 22-8, p.2.)

**MEMORANDUM DECISION AND ORDER - 21**

another inmate, Lance Wood, to assist him with his responses to CCA Defendants' discovery requests, or to appoint counsel for Plaintiff. *Id*.

At the outset, Plaintiff does not need the Court's permission to have another inmate assist him with his case. However, any inmate providing legal assistance to another needs to be done in accordance with prison policies and procedures governing such assistance. And although Plaintiff would indeed be better served with the assistance of counsel, as would all pro se litigants, he is not proceeding in forma pauperis in this case so the Court has no authority to request that an attorney represent him. The statute which provides the Court with such discretionary authority, 28 U.S.C. § 1915(e)(1), only applies to indigent civil litigants. Accordingly, if Plaintiff desires counsel he must obtain counsel through his own actions.

Next, having reviewed the parties' arguments, the propounded discovery and Plaintiff's responses thereto, the Court concludes that: (1) some of these Interrogatories and Requests for Admission are now moot because they relate solely to obtaining information from the Plaintiff regarding Defendant Brenner or claims in this lawsuit that have already been dismissed or will be dismissed by this Order; (2) as to the remaining Interrogatories, Plaintiff will be compelled to provide responses in compliance with the Federal Rules of Civil Procedure governing this type of discovery; and (3) as to the remaining Requests for Admission, Plaintiff will be ordered to provide amended answers.

Interrogatory Nos. 9 and 11-13, and the subsequent, related Requests for Admission Nos. 1-3 and 10-14 only seek information regarding Defendant Brenner's

**MEMORANDUM DECISION AND ORDER - 22**

isolated statements and conduct toward Plaintiff, and/or Plaintiff's claims of inadequate medical care and denial of his religious diet. (*See* Dkts. 22-4, pp.7-8; 22-6, pp.2-5.) Because all claims against Defendant Brenner were dismissed previously by Order of this Court, and Plaintiff's claims of inadequate medical care and denial of his religious diet will be dismissed by this Order, the requested discovery is deemed moot and Plaintiff need not respond. Additionally, Interrogatory No. 25 seeks information regarding Plaintiff's contention that he exhausted all his administrative remedies for the claims alleged in this litigation. Because the Court has already addressed and resolved the exhaustion issue in this Order, this issue is also moot and Plaintiff need not respond to Interrogatory No. 25.

As to the remaining Interrogatory Nos. 10 and 14-24, the Court finds that they are all relevant to the surviving claims alleged in Plaintiff's Amended Complaint and therefore within the scope of discoverable information. *See* Fed. R. Civ. P. 26(b)(1). Plaintiff's blanket response to each of these Interrogatories that he will "supplement" this request when he obtains the documents he has requested from the Defendants is insufficient and not in compliance with Federal Rule 33(b)(3), which requires each interrogatory "be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). During discovery, Plaintiff is obligated to furnish information to the CCA Defendants which supports the claims he has alleged in the Amended Complaint; he may not sidestep this obligation by providing no response whatsoever until he receives certain documents from CCA Defendants. That is not how discovery works. The Court will grant

**MEMORANDUM DECISION AND ORDER - 23**

Defendants' Motion to Compel as to these Interrogatory Nos. 10 and 14-24, and Plaintiff

will be ordered to provide responses, without objection, to CCA Defendants'

Interrogatory Nos. 10 and 14-24 within ten days of this Order.

Regarding CCA Defendants' Requests for Admission Nos. 4-9 and 15-67, the

Court has reviewed each of these Requests and finds that they are relevant to the

surviving claims alleged in Plaintiff's Amended Complaint and therefore within the scope

of discoverable information. *See* Fed. R. Civ. P. 26(b)(1). Plaintiff's repeated response to

each requested admission that he is "unable to respond," followed by a blanket, non-

specific objection to these requests, does not comply with his obligation to answer or

object to these Requests for Admission as set forth in Federal Rule 36. In particular, the

responding party must either admit the matter, specifically deny it, or state in detail why

he cannot truthfully admit or deny it. Fed. R. Civ. P. 36(a)(4). Alternatively, the

answering party may assert a lack of knowledge or information as a reason for failing to

admit or deny, but "only if the party states that it has made reasonable inquiry and that the

information it knows or can readily obtain is insufficient to enable it to admit or deny."

*Id.* Moreover, if a party objects to a request, the grounds for doing so must be stated. Fed.

R. Civ. P. 36(a)(5).

Plaintiff's three-word response to each of these remaining 59 Requests for

Admission, and his blanket objection to all of them, do not comply with any of the

answering requirements set forth in Federal Rule 36. Accordingly, it is within the purview

of the Court to order that for each of these Requests for Admission, either the matter is

**MEMORANDUM DECISION AND ORDER - 24**

admitted or an amended answer be served. Fed. R. Civ. P. 36(a)(6). CCA Defendants request that the Court deem each of the matters in these Requests for Admission admitted. Although Plaintiff's repeated response to these Requests for Admission fails to comply with the requirements of Federal Rule 36, the Court determines that Plaintiff's response was not evasive, nor was he intentionally disregarding the answering requirements imposed by this Rule. Accordingly, the Court will not impose the "severe sanction of ordering a matter admitted" at this time. *Asea, Inc. v. Southern Pac. Transp. Co.*, 669 F.2d 1242, 1247 (9th Cir. 1981). Plaintiff is a pro se prisoner who states that he "just did not know how to respond," and may not have been aware of the answering requirements in Federal Rule 36. But now that he is aware of the applicable Rule and its answering requirements, the Court will grant in part CCA Defendants' Motion to Compel to the extent Plaintiff will be ordered to provide amended responses to CCA Defendants' Requests for Admission Nos. 4-9 and 15-67 within ten days of this Order. Plaintiff is warned that if his amended responses are subject to a future motion and the Court again finds noncompliance with Rule 36 or a lack of good faith in responding, the consequence will mostly likely be an order that the matters are admitted.

## CONCLUSION

CCA Defendants' Motion to Dismiss for failure to exhaust administrative remedies will be granted in part as to Plaintiff's claims of inadequate medical care and interference with his religious diet. However, the Motion to Dismiss will be denied in part as to Plaintiff's claims of failure to protect, harassment and retaliation. CCA Defendants'

**MEMORANDUM DECISION AND ORDER - 25**

Motion to Compel certain discovery from Plaintiff will be granted in part as to

Interrogatory Nos. 10 and 14-24, and Requests for Admission Nos. 4-9 and 15-67, and

Plaintiff must provide amended responses thereto within ten days of this Order. The

Motion to Compel will be deemed moot as to Interrogatory Nos. 9, 11-13, and 25, and

Requests for Admission Nos. 1-3 and 10-14.

## ORDER

**IT IS ORDERED:**

1.   CCA Defendants' 12(b) Motion to Dismiss (Dkt. 23) is **GRANTED in**

**part**. Plaintiff's claims of inadequate medical care and interference with

religious diet are dismissed without prejudice. CCA Defendants' 12(b)

Motion to Dismiss (Dkt 23) is **DENIED in part** as to Plaintiff's remaining

claims of CCA Defendants' failure to protect Plaintiff from prison staff's

inappropriate behavior, harassment and retaliation.

2.   CCA Defendants' Motion to Compel Plaintiff to Respond to Defendants'

First Discovery Requests and to Deem Defendants' First Requests for

Admissions to Plaintiff Admitted (Dkt. 22) is **GRANTED in part**. Within

ten days of entry of this Order, Plaintiff shall provide: (1) responses,

without objection, to CCA Defendants' First Discovery Requests to

Plaintiff - Interrogatory Nos. 10, and 14-24 (Dkt. 22-3, pp. 7-12); and (2)

amended responses to CCA Defendants' First Request for Admissions to

Plaintiff - Request for Admission Nos. 4-9, and 15-67. (Dkt. 22-6, pp. 5-

**MEMORANDUM DECISION AND ORDER - 26**

17). CCA Defendants' Motion to Compel Plaintiff to Respond to Defendants' First Discovery Requests and to Deem Defendants' First Requests for Admissions to Plaintiff Admitted (Dkt. 22) is **MOOT** as to CCA Defendants' First Discovery Requests to Plaintiff - Interrogatory Nos. 9, 11-13, and 25, and CCA Defendants' First Request for Admissions to Plaintiff - Request for Admission Nos. 1-3, and 10-14.



DATED: **June 19, 2013**

Honorable B. Lynn Winmill
Chief U. S. District Judge