UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOHN HORONZY,<br><br>              Plaintiff,<br><br>      v.<br><br>CORRECTIONAL CORPORATION OF AMERICA; MS. BRENNER; MS. FRY; MR. YALEE; MS. RODGERS; MR. CHENEY; JUAN IBARRA; and JOHN AND JANE DOES 1-5, all named in their individual and official capacities,<br><br>              Defendants. | Case No. 1:11-CV-00246-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Currently pending before the Court are Defendants Corrections Corporation of America, Susan Fry, Shane Yehle, Linda Rogers, Daniel Chaney and Juan Ibarra's ("CCA Defendants") Motion for Summary Judgment (Dkt. 42) and Plaintiff John Horonzy's Motion for Judicial Notice (Dkt. 49).

Plaintiff, a prisoner in the custody of the Idaho Department of Correction ("IDOC"), is proceeding pro se in this civil rights action. Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the

briefs and record and that the decisional process would not be significantly aided by oral argument. Accordingly, the Court will decide this matter on the record without oral argument. D. Idaho L. R. 7.1.

## INTRODUCTION

Plaintiff is currently incarcerated at Idaho State Correctional Institution (ISCI). However, between July 6, 2009, and February 15, 2011, Plaintiff was incarcerated at the Idaho Correctional Center (ICC).

On May 25, 2011, Plaintiff filed a civil rights complaint alleging that while he was incarcerated at ICC, Defendant Brenner, a correctional officer, made sexual advances toward him. (*See* Dkt. 3.) When Plaintiff declined her sexual advances, he alleges that Defendant Brenner retaliated against him by preventing him from receiving medical treatment and his religious diet, conducting numerous cell and pat-down searches on him, placing him in segregation, and destroying and/or stealing his property. Plaintiff further alleges that Defendants Fry, Yehle, Rogers, and Chaney aided Defendant Brenner in these actions, and that they fired him from his prison job as well. Defendant Ibarra, an ICC investigator, later interviewed Plaintiff about the alleged misconduct but didn't seem concerned about Defendants' threatening conduct toward Plaintiff, and instead harassed and intimidated Plaintiff. (*Id.*)

The Court reviewed Plaintiff's initial Complaint and permitted him to proceed only against Defendant Brenner for his claims of Eighth Amendment sexual abuse and First Amendment retaliation. (Dkt. 7.) Thereafter, Plaintiff filed a Supplemental or First

Amended Prisoner Civil Rights Complaint. (Dkt. 8.) On June 15, 2012, the Court determined that Plaintiff cured the deficiencies in his original Complaint so he was then permitted to proceed against all Defendants on all of his claims, including constitutional violations of failure to protect, calculated harassment and retaliation, inadequate medical care, and denial of religious practices, so long as he served the Amended Complaint on all Defendants within 60 days after entry of the Order. (Dkt. 12, p.2; Dkt. 8, pp.4-12.) Plaintiff served all the Defendants, except Defendant Brenner. On February 11, 2013, the Court ordered all claims against Defendant Brenner dismissed without prejudice because she was not served within the time period set forth in the June 15, 2012 Order. (Dkt. 27, p.4.)

On January 10, 2013, the CCA Defendants filed a motion to dismiss for failure to exhaust administrative remedies. (Dkt. 23.) The Court dismissed Plaintiff's claims of inadequate medical care and interference with his religious diet on the grounds of failure to exhaust administrative remedies. However, the Court denied the motion as to Plaintiff's claims of failure to protect, harassment and retaliation and allowed those claims to proceed. (Dkt. 31.) Defendants now move for summary judgment on those claims.

## PLAINTIFF'S MOTION FOR JUDICIAL NOTICE

Plaintiff has filed a motion asking the Court take notice of the facts of another case involving CCA in order to show "the propensity of the Defendants to hide the truth of any matter asserted." (Dkt. 49, p. 2.)

**MEMORANDUM DECISION AND ORDER - 3**

A court may take judicial notice of adjudicative facts which are not subject to a reasonable dispute. Fed. R. Evid. 201. When judicial notice has been taken of certain facts, the fact finder must accept the facts as conclusive. *Id.* The advisory committee's notes to Rule 201 clarify the following relevant principles. First, adjudicative facts are "simply the facts of the particular case." A court may not take judicial notice of "legislative facts," which are, in contrast, those facts "which have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body."

Plaintiff is asking the Court to take judicial notice of the other case to support his proposition that Defendants are not truthful. This is not an "adjudicative fact" encompassed by Rule 201. Plaintiff's motion is denied.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## 1.    Factual Background

This section includes facts that are undisputed and material to the resolution of the issues in this case. Where material facts are in dispute, the Court has included Plaintiff's version of facts, insofar as that version is not contradicted by clear documentary evidence in the record. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.")

Plaintiff John Horozny is an inmate under the jurisdiction of the IDOC. He was

incarcerated at ICC from July 6, 2009 through February 15, 2011. On March 13, 2011,

ICC Investigator Defendant Ibarra received an Offender Concern Form dated March 10,

2011 from Plaintiff which stated:

> From July 2009 to Feb. 2011 I was harassed and threatened
> by ICC staff. I was propositioned by my case manager
> Brenner of B pod who repeatedly would touch my hand and
> make comments that made me feel I was being pressured, or
> else. When I declined, Brenner sent Sgt. Fry to fire me from
> my job. Then I started to be harassed from Rodgers and
> Yalee of B pod. Then Rodgers put me in segregation for 4
> days, no [disciplinary offense report], just punishment.
> Request investigation.

(Sec. Ibarra Dec., ¶ 9; Ex. C (Dkts. 44, 44-3)). Ibarra responded on March 13, 2011,

stating: "Please provide me a detailed report with dates served to Juan Ibarra ICC

Investigator." (*Id*. at ¶ 10.)

On March 16, 2011, Ibarra opened an investigation into Plaintiff's allegations. He

interviewed Defendant Brenner by telephone and she denied all of Plaintiff's claims.

Ibarra also interviewed and collected written statements from Defendants Fry, Yehle, and

Rogers. Ibarra did not interview Defendant Chaney because he was not mentioned in

Plaintiff's complaint as someone who harassed or retaliated against him. (*Id*. at ¶¶ 11-

16.)

On March 30, 2011, Ibarra met with Plaintiff at ISCI regarding the complaints

Plaintiff had raised. Plaintiff informed Ibarra that he had prepared a six page report as

Ibarra had requested. However, Plaintiff did not share his report with Ibarra and did not

share any details regarding the dates or the alleged harassment by ICC staff. Ibarra

**MEMORANDUM DECISION AND ORDER - 5**

informed Plaintiff he could take the report at that time or Plaintiff could send it to him within two weeks. Ibarra states that Plaintiff told Ibarra that he was not assaulted by Brenner and instead she only touched his hands. (*Id*. at ¶ 17; Ex. K (Dkt. 44-11.))

On May 19, 2011 Ibarra closed the investigation because he had not received the detailed report he had requested, even though Plaintiff had been given additional time. Ibarra determined that based on the minimal information from Plaintiff and reports he received from ICC staff, Plaintiff was not harassed or retaliated against. (*Id*. at ¶ 18; Ex. I (Dkt. 44-12)). Plaintiff's version of the facts is different. He attests that Ibarra told him not to pursue his grievance by stating "it was probably better if [he] dropped this case", which Plaintiff took as a threat. (Pla. Aff., ¶ 9 (Dkt. 48-1.))

In response to Defendants' interrogatories, Plaintiff stated that Brenner's sexual advances began in June or July 2010 and that he complained about these advances, both verbally and in writing, to a "Corrections Officer of ICC."[1] He states he had "written documentation regarding each and every occasion that these sexual advances occurred

---

[1] Plaintiff does not specify who he complained to. Defendants Yehle, Fry, Rogers and Chaney never received complaints from Plaintiff that he was being sexually harassed by Brenner. These Defendants were also never informed by Ms. Brenner, or anyone else, of any inappropriate relationship, or pursuing of such, between Brenner and Plaintiff. Further, Defendants Yehle, Fry and Rogers did not become aware of Plaintiff's complaints against them until March 2011 when they were interviewed by Ibarra. Chaney was unaware of any allegations until Plaintiff filed this current lawsuit in May 2011. (Fry Dec., ¶¶ 6, 10 (Dkt. 42-10); Yehle Dec., ¶¶ 5, 9 (Dkt. 43); Rogers Dec., ¶¶ 6 (Dkt. 43-2); Chaney Dec., ¶¶ 5, 7 (Dkt. 43-6.))

[which] was taken from my cell during the retaliatory cell searches."[2]  (*See* Stoll Dec., Ex. A pp. 6-7; Ex. B, p. 2 (Dkt.43-9--10.))

Defendants Yehle,[3] Fry[4] and Chaney[5] never personally searched Plaintiff's cell between the period of July 2009 through February 2011 when he was housed at ICC. (Penn Decl., ¶ 10 (Dkt. 42-3)).  Defendant Rogers was a part of two groups of correctional officers that searched Plaintiff's cell on two occasions: November 18, 2009 and April 22, 2010.  (Penn Dec., Ex. F (Dkt. 42-9); Rogers Dec., ¶ 10.)  The November 18, 2009 search was a routine search conducted by Defendant Rogers, Nicole Moore and Robert Rodriguez.   The officer who documented this search noted: "B-209- cell somewhat clean, cluttered property, beds were not made."  The April 22, 2010 search was also a routine search conducted by Defendant Rogers and Jwon Pearce.   It was noted: "B-209 - cell cluttered, lots of property and legal."  The following contraband was found: "B-209 - removed altered state issued pillow, plastic bags, ziplock bags, twisty ties,

---

[2]  There is no evidence submitted of such documentation having been confiscated during cell searches.

[3]  Yehle worked in the ABC housing unit from May 2009 through March 2010.  During this time, Plaintiff complained to Yehle about waking Plaintiff up when he was asleep during the day because he worked as a night janitor.  Yehle explained to Plaintiff that he had to wake him up in order to conduct welfare checks as part of his duties.  (Yehle Dec., ¶ 6.)  Defendant Rogers ran into similar complaints from Plaintiff when she conducted welfare checks.  (Rogers Dec., ¶ 11.)

[4]  In 2009, Fry worked in the ABC and JKL housing units.  From 2010 to 2012, she worked in the Programs Unit, which is in the PIE building, separate and apart from the main ICC building where Plaintiff was housed.  (Fry Dec,. ¶ 4.)

[5]  From July 2009 through November 2010, Chaney was the Unit Manager assigned to B, C, J, K and L pods.  (Chaney Dec., ¶ 4.)

'remote control' and misc. garbage." *Id.*

On one occasion, it was brought to Defendant Yehle's attention that Plaintiff was playing video games while clocked in. Yehle approached Plaintiff and told him that playing video games while clocked in as working was not allowed. Yehle informed Defendant Fry about this incident. (Yehle Dec., ¶ 7.) On January 8, 2010, Defendant Fry fired Plaintiff from his position as a janitor because Plaintiff had been caught several times by Fry, and other staff including Yehle, playing video games while clocked in as working. (Fry Dec., ¶ 11; Ex. B.)

On July 23, 2010, Defendant Chaney had scheduled Plaintiff to be moved from B-pod to L-pod. Chaney states that the move was for Plaintiff's own safety and the safety and security of the facility as many inmates complained of Plaintiff's threatening and confrontational behavior. Plaintiff refused the move and Chaney had him taken to segregation for four days for "failure to obey." On July 28, 2010, Plaintiff was released to W-pod for one day and then moved to H-pod. (Chaney Dec., ¶¶ 8-11; Ex. A.)

On January 19, 2011 Unit Manager Norma Rodriguez requested the Plaintiff be moved to ISCI for security reasons. He was then transferred to ISCI on February 15, 2011. (Burch Dec., Exs. A & B (Dkt. 28-2.))

**2. Summary Judgment Standard**

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the

summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is not "a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, there must be no *genuine* dispute as to any *material* fact in order for a case to survive summary judgment. Material facts are those "that might affect the outcome of the suit." *Id.* at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party is entitled to summary judgment if that party shows that each material fact cannot be disputed. To show that the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (internal quotation marks omitted). Instead, the "party opposing summary judgment must direct

**MEMORANDUM DECISION AND ORDER - 9**

[the Court's] attention to specific triable facts." *So. Ca. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

If the moving party meets its initial responsibility, then the burden shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

Material used to support or dispute a fact must be "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).[6] Affidavits or declarations submitted in support of or in opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e)(2). The Court may grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that

---

[6] In determining admissibility for summary judgment purposes, it is the content of the evidence rather than its form that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003). If the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment even if the evidence itself is hearsay. *Id*. (affirming consideration of hearsay contents of plaintiff's diary on summary judgment because at trial, plaintiff's testimony would not be hearsay).

the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). The Court may also grant summary judgment to a non-moving party, on a ground not raised by either party, or sua sponte provided that the parties are given notice and a reasonable opportunity to respond. Fed. R. Civ. P. 56(f).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. Although all reasonable inferences which can be drawn from the evidence must be drawn in a light most favorable to the non-moving party, *T.W. Elec. Serv., Inc.*, 809 F.2d at 630-31, the Court is not required to adopt unreasonable inferences from circumstantial evidence, *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

**3.     Retaliation Claims**

**A.     Standard of Law**

The required elements of a retaliation claim are the following: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, . . . that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). Although a "chilling effect on First Amendment rights" is enough to state an injury, *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001), "bare allegations of arbitrary retaliation" are insufficient to be permitted to go forward on a retaliation claim, *Rizzo v. Dawson*, 778 F.2d 527, 532 n.4 (9th Cir. 1985).

Federal courts "should 'afford appropriate deference and flexibility' to prison officials [when evaluating the] proffered legitimate penological reasons for conduct alleged to be retaliatory." *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (quoting *Sandin v. Conner*, 115 S.Ct. 2293, 2299 (1995)). "Specifically, the prison administrators cannot be held liable unless their retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." *Vance v. Barrett*, 345 F.3d 1083, 1093 (9th Cir. 2003).

While "timing can be properly considered as circumstantial evidence of retaliatory intent," there generally must be something more than timing alone to support an inference of retaliatory intent. *Pratt*, 65 F.3d at 808. Retaliation is not established simply by showing adverse activity by defendant *after* protected speech; plaintiff must show a nexus between the two. *See Huskey v. City of San Jose,* 204 F.3d 893, 899 (9th Cir. 2000) (a retaliation claim cannot rest on the logical fallacy of *post hoc, ergo propter hoc*, i.e., "after this, therefore because of this").

**B.    Discussion**

Plaintiff claims that beginning in 2009 he was retaliated against because he denied and complained of Brenner's sexual advances.  However, he admits that Brenner's alleged harassment did not begin until June or July of 2010. (*See* Stoll Dec., Ex. A pp. 6-7; Ex. B, p. 2.)  Accordingly, any cell searches or other alleged acts of retaliation that took place prior to June 2010 could not, in fact, be in retaliation for protected conduct that

had not yet occurred (complaints of Brenner's sexual harassment/abuse).[7]

Further, Defendants Yehle, Rogers, Fry all deny any knowledge of any sexual advances or inappropriate relationship between Plaintiff and Brenner until Ibarra's investigation in March 2011. Chaney denies any knowledge of the same until this lawsuit was filed in May 2011. Plaintiff does not dispute these assertions of fact and provides no evidence to the contrary. In response to Defendants' interrogatories, he stated only that he complained to an "ICC Correctional Officer" but does not provide a name for the officer. That does not suffice to create a genuine issue of material fact that any of these Defendants were aware of any inappropriate relationship or advances between Brenner and Plaintiff or that Plaintiff made complaints of such conduct to these Defendants in order to demonstrate that Defendants retaliated against Plaintiff. Where there is no evidence that prison officials knew of the conduct giving rise to the alleged retaliatory action, summary judgment is appropriate. *See Pratt*, 65 F.3d at 808. Mere allegations that Plaintiff engaged in protected activity, without knowledge resulting in animus by a Defendant, is insufficient to show that Plaintiff's protected activity was the motivating factor behind a Defendant's actions.

Further, the evidence all supports Defendants' assertions that Defendants Yehle,

_____

[7] While the Offender Concern Form Plaintiff submitted in March 2011 stated that Brenner began harassing him in July 2009, Plaintiff does not dispute the fact set forth by Defendants that the sexual advances began in June or July 2010, as Plaintiff answered in response to Defendants' interrogatories. If a party "fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e)(2). Accordingly, the Court considers the fact that Brenner's alleged actions towards Plaintiff did not begin until June or July 2010 as undisputed.

**MEMORANDUM DECISION AND ORDER - 13**

Fry and Chaney never searched Plaintiff's cell and therefore could not have conducted a retaliatory search. (*See* Penn Decl. ¶ 10.) While there is evidence that Rogers did search Plaintiff's cell, both searches occurred *prior* to June 2010. One took place on November 18, 2009 and another on April 22, 2010. (*Id*. at ¶¶ 11-12.) Further, these searches were routine and cell searches are reasonably related to legitimate government interests in intercepting contraband, maintaining institutional security and order, and "operating the institution in a manageable fashion." *Bell v. Wolfish*, 441 U.S. 520, 540 n. 23, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *see Florence v. Board of Chosen Freeholders of County of Burlington*, – U.S. –, 142 S.Ct. 1510, 1516 (2012). Plaintiff has offered no assertion or evidence to the contrary to show a retaliatory intent.

Fry did terminate Plaintiff from his position as a nighttime janitor as Plaintiff alleges. However, this occurred in January 2010, *prior* to when Brenner allegedly harassed Plaintiff. *See* Fry Decl., ¶ 11. This could not be retaliation for an act that had not yet occurred. Additionally, both Fry and Yehle attested that Plaintiff often was playing video games while clocked in to work which led to his termination. *See id.* Even if the timing is disregarded, there is no evidence to support an inference that his termination from the position is linked to a retaliatory intent and his termination was for a legitimate penological reason. Again, Plaintiff provides no evidence to the contrary.

On July 23, 2010, Chaney had arranged for Plaintiff to be moved from B-Pod to L-Pod. Chaney had determined that B-Pod was not the best place for Plaintiff, because his cell-mates complained about him and would ask to be moved. (Chaney Decl. ¶¶ 8-9.)

**MEMORANDUM DECISION AND ORDER - 14**

Because Chaney supervised both B-Pod and L-Pod, he would monitor Plaintiff's transition. When Chaney informed Plaintiff of the move on July 23, 2010, Plaintiff refused to move. Because of Plaintiff's refusal to obey an order, Chaney had Plaintiff taken to segregation for four days, until another bed became available. (*Id*. at ¶¶ 9-10.)

While his placement in segregation did occur after the alleged abuse/harassment by Brenner, Plaintiff has not set forth any evidence that placing him in segregation did not serve a legitimate penological interest. *See Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (affirming summary judgment where the prisoner failed to present evidence that he was retaliated against for exercising his constitutional rights and that the retaliatory action did not advance legitimate penological goals). Chaney attests that Plaintiff refused a cell move. Discipline for refusal to follow an order serves a legitimate goal in a prison setting; maintaining prison discipline is a legitimate penological goal. *See id. See also Wise v. WA Dep't of Corrections*, 331 Fed.Appx. 477, 479 (9th Cir. 2009) (affirming summary judgment on retaliation claim where plaintiff had admitted he was placed in segregation for refusing a cell assignment). The Segregation Housing Order provides "failure to obey" as the reason for Plaintiff's placement in segregation. (Chaney Dec., Ex. A.) Plaintiff submits no evidence to the contrary. There is nothing in the record that supports the inference or creates a genuine issue of material fact that Plaintiff was placed in segregation with retaliatory intent.

Finally, Plaintiff also alleges a retaliation claim against Defendant Ibarra, the ICC Investigator who received Plaintiff's complaint of harassment and retaliation on March

13, 2010.  Ibarra attests, and the evidence shows, that he interviewed Plaintiff on March 30, 2011 as well as Brenner, Rogers, Yehle and Fry between March 18 - 22, 2011.  Ibarra gave Plaintiff time to submit his written document of allegations against Brenner, which Plaintiff never did.  Ibarra then closed the investigation on May 19, 2011.  Plaintiff attests that Ibarra told him "it was probably better if [he] just dropped this case" during the course of Ibarra's interview with Plaintiff.  (Pla.'s Aff., ¶ 9.)  Plaintiff alleges this was done to intimidate him from continuing with pursuing his complaint.

The Court finds that Plaintiff has not raised a triable issue of fact as to whether Ibarra retaliated against Plaintiff by telling him to discontinue his complaint.  The question for the Court is whether the record, taken in the light most favorable to Plaintiff, reveals statements by Ibarra that a reasonable jury could "interpret as intimating some form of punishment or adverse regulatory action would follow."  *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009) (quoting *Okwedy v. Molinari*, 333 F.3d 339, 343 (2d Cir. 2003)).  The Court concludes that the record before it does not establish such a finding.  While the threat need not be explicit to prevail on a retaliation claim, it must carry an "implication of some consequence of a failure to heed that warning."  *Brodheim*, 584 F.3d at 1270.  There is no such implication in Ibarra's statement that "it was probably better if [Plaintiff] just dropped this case."  (Pla. Aff., ¶ 9.)  In *Brodheim*, the Ninth Circuit found a genuine issue of material fact as to whether the statement "I'd also like to warn you to be careful what you write, req[u]est on this form" constituted an adverse action. 584 F.3d at 1270.  The court held that a statement that "warns" implies a consequence if that

person does not abide by the warning.  *Id.  See also McDowell v. Rivera*, 2013 WL

6909445, *8 (E.D. Cal. Dec. 31, 2013) (finding adverse action for retaliation claim where

prisoner was informed by defendants that if he persisted with his grievances "his time was

going to go worst [*sic*].")  Ibarra's statement does not "warn," it is more of an observation

than anything else, especially given the context that Ibarra also asked Plaintiff to provide

additional information to support his allegations, which Plaintiff never provided.  The

Court finds no reasonable jury could find Ibarra's statement amounts to a threat and

therefore, Plaintiff's retaliation claim against Ibarra fails.

**4.      Eighth Amendment Claims**

**A.      Standard of Law**

The Eighth Amendment to the United States Constitution protects prisoners

against cruel and unusual punishment. To state a claim under the Eighth Amendment,

Plaintiff must show that he is "incarcerated under conditions posing a substantial risk of

serious harm," or that he has been deprived of "the minimal civilized measure of life's

necessities" as a result of Defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834

(1994) (internal quotation marks omitted). He must also show that Defendants were

deliberately indifferent to his needs. "[D]eliberate indifference entails something more

than mere negligence, [but] is satisfied by something less than acts or omissions for the

very purpose of causing harm or with knowledge that harm will result." *Id.* at 835. To

exhibit deliberate indifference, a prison official "must both be aware of facts from which

the inference could be drawn that a substantial risk of serious harm exists, and he must

also draw the inference." *Id.* at 837.

Prisoners have an Eighth Amendment right to be free from sexual abuse. *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000). There is no question that sexual abuse by a prison guard is "inconsistent with contemporary standards of decency and repugnant to the conscience of mankind." *Whitley v. Albers*, 475 U.S. 312, 327 (1986) (internal quotation marks omitted). Although threats and verbal abuse are generally insufficient to state a civil rights violation, sexual harassment can constitute "calculated harassment unrelated to prison needs," which violates the Eighth Amendment. *Hudson v. Palmer*, 468 U.S. 517, 530 (1984).

**B.      Discussion - CCA**

To succeed on his claims against CCA, as an entity, Plaintiff must allege sufficient facts in the complaint meeting the test articulated in *Monell v. Department of Social Services of New York*, 436 U.S. 658, 69–194 (1978); *see Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (applying *Monell* to private entities). Under *Monell*, the requisite elements of a § 1983 claim against a municipality or private entity performing a state function are the following: (1) the plaintiff was deprived of a constitutional right; (2) the entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *See Mabe v. San Bernardino County, Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001).

An unwritten policy or custom must be so "persistent and widespread" that it

constitutes a "permanent and well settled city policy." *Monell*, 436 U.S. at 691.

"Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency, and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citations omitted). Vague and conclusory allegations of official participation in civil rights violations are not sufficient. *See Ivey v. Board of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

Plaintiff alleges that his constitutional right were violated by CCA when they failed to protect him from the individual Defendants' retaliation and calculated harassment and Brenner's sexual abuse, placing his life in danger and destruction of his legal material and personal property. He alleges CCA violated his constitutional rights by "not properly training defendants, or creating and enforcing a policy, or taking disciplinary actions against them." (Amend. Comp., p. 6.)

A plaintiff is required to prove evidence of a "formal policy" or "widespread practice" in order for a municipality or local government unit to be held liable under § 1983. *Nadell v. Las Vegas Metro. Police Dept.*, 268 F.3d 924, 949 (9th Cir. 2001). A custom may be inferred from "evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." *Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992). However, "[a] plaintiff cannot prove the existence of a municipal policy or custom based solely on the occurrence of policy or custom of a single incident or unconstitutional action by a non-policymaking employee." *Davis v. City of*

*Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989).

There is no evidence of a policy or custom to violate Plaintiff's Eighth Amendment right by failing to protect against sexual abuse and retaliation. Plaintiff's conclusory allegations have not been substantiated by evidence that creates a genuine issue of material fact. Instead, the evidence before the Court indicates that CCA follows, and all ICC personnel[8] are familiar with, the Idaho Department of Correction's procedures that indicate the process for reporting rape, sexual assault and sexual activity, as well as the procedures for reporting and investigating incidents of the same. (*See* Sec. Ibarra Dec., ¶¶ 4-8, Exs. A, B.) Plaintiff has not submitted any documents, statements, records or other evidence tied to CCA to show an official policy that demonstrated a deliberate indifference to Plaintiff's constitutional rights.

Nor is there evidence of a failure to train by CCA. A failure to train can be actionable under § 1983 if it amounts to "deliberate indifference to the rights of persons' with whom those employees are likely to come into contact." *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001). Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id*. However, there is a narrow range of circumstances in which a pattern of similar violations might not be

---

[8] The exception from this analysis is Ibarra. An official's action does not mean that the entity has a policy requiring that action. The official's action might be *consistent* with such a policy, but mere consistency is not enough to state a claim under § 1983. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Plaintiff has failed to show that Ibarra's actions were a result of CCA policy, as opposed to Ibarra's own negligent or deliberately indifferent conduct.

necessary to show deliberate indifference.  In *City of Canton v. Harris*, the Supreme

Court left open the possibility, however rare, that the unconstitutional consequences of

failing to train could be so patently obvious that a city could be liable under § 1983

without proof of a pre-existing pattern of violations.  489 U.S. 378, 390 (1989).

Plaintiff has not presented evidence of either of these.  Under the "absence of

training" theory, Plaintiff has failed to bring forward facts from which a jury could find

that an absence of training or absence of a more particular policy *caused* Plaintiff's

alleged injuries.  Plaintiff has not shown that a pattern of similar sexual abuse violations

occurred prior to his alleged incidents of which Defendants were aware in time to make

policy changes.  Further, under a "rare possibility" theory, Plaintiff has not shown there is

a complete absence of a policy[9] or absence of any training, together with a grave risk of

harm, that could cause CCA to be liable under these facts.  Plaintiff has not provided any

evidence that in the absence of any training, the correctional officers did not know they

could not sexually abuse and/or harass inmates.

### C.    Discussion - Individual Defendants

There is no evidence that, until the March 10, 2011 Offender Concern

Form that Ibarra investigated, Plaintiff made any complaints of sexual abuse by Brenner

to Defendants Rogers, Yehle, Fry and Chaney.  Plaintiff states only that he reported the

sexual abuse to an "ICC Correctional Officer."

---

[9]  Instead, there is evidence of a policy and procedure for reporting sexual abuse or harassment.  (*See* Sec. Ibarra Dec., ¶¶ 4-8, Exs. A, B.)

To prevail on a claim that a Defendant personally violated the Eighth Amendment, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

There is no evidence of Defendants Rogers, Yehle, Fry or Chaney's personal involvement in Plaintiff's allegations of sexual abuse by Brenner. Instead, Plaintiff makes conclusory allegations that they were aware of the sexual abuse and retaliated against him for not complying with Brenner's sexual advances. Plaintiff must provide meaningful evidence, more than a mere scintilla, that would tend to prove his assertions in order to overcome summary judgment. Instead, Defendants attest they were not aware of the alleged sexual abuse until, at the earliest, March 2011, when Plaintiff submitted his Offender Concern Form and Ibarra conducted an investigation.

Plaintiff's other allegations against these Defendants, that he was fired from his job, that he was subjected to cell searches, and that he was placed into segregation on July 23, 2010, do not, in any manner, demonstrate that these Defendants were deliberately indifferent to a substantial risk of serious harm. Aside from the fact that these actions were either taken for a valid reason (termination from job), routine (cell searches) or related to a legitimate penological interest (segregation), they do not implicate a grave risk of harm that the Eighth Amendment protects against.

Plaintiff's allegations against Defendant Ibarra differ from those against the other individual Defendants. Plaintiff alleges Ibarra threatened and intimidated Plaintiff when

investigating Plaintiff's March 10, 2010 grievance. Plaintiff attests: "[Ibarra] told me that it was probably better if I just dropped the case. I believed this to be a threat." (Pl.'s Aff., ¶ 9.)

A one-time incident of verbal harassment, abuse, and threats, without more, is not sufficient to state a constitutional deprivation under § 1983. *Oltarzewski v. Ruggiero*, 830 F.2d 136 (9th Cir. 1987) (allegations that correctional officer told plaintiff tht he would transfer him to a higher custody status unit if he tried to go to the law library and that he would be sorry if he filed a class action suit were not actionable under § 1983); *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (allegations that defendant "personally informed plaintiff that if ne never cut his hair and shaved his beard that he would lose what class he had and would have a bad time at Wrightsville" and that defendant "verbally abused him and threatened him for filing grievances" did not constitute a constitutional violation). The alleged conduct, absent more, cannot be said to rise to the level of conduct which "shocks the conscience." As a result, the Court concludes that Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment claim.

## CONCLUSION

Accordingly, the Court will grant Defendants' Motion for Summary Judgment on all claims.

## ORDER

**IT IS ORDERED:**

1.      Defendants' Motion for Summary Judgment (Dkt. 42) is GRANTED.  The claims against Defendants CCA, Fry, Yehle, Rogers, Chaney and Ibarra are dismissed with prejudice.

2.      Plaintiff's Motion for Judicial Notice (Dkt. 49) is DENIED.

DATED:  **August 1, 2014**

Honorable B. Lynn Winmill
Chief U. S. District Judge